# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-09-00126-CR

**Carl White, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF BELL COUNTY
### NO. 2C07-10769, HONORABLE JOHN MISCHTIAN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Carl White pleaded guilty to possessing less than two ounces of marihuana. *See* Tex. Health & Safety Code Ann. § 481.121 (West Supp. 2009). The trial court deferred adjudication and placed appellant on community supervision for twelve months. In two points of error, appellant contends that the trial court erred by overruling his pretrial motion to suppress evidence. We overrule these points and affirm the order deferring adjudication.

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). This means that the ruling will be upheld if it is reasonably supported by the record and is correct under any applicable legal theory. *Id*. The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete

deference in determining historical facts, but we review de novo the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).

The only witness at the suppression hearing was Killeen police officer Mattias Smith. Smith testified that at 4:43 p.m. on November 12, 2007, he stopped a Toyota Camry being driven on Lake Street in Killeen after he noticed that the driver was not using a seat belt. As Smith walked toward the stopped vehicle, the driver stuck his head out of the window and looked directly at the officer. Smith testified that this action "gave him a red flag" because he had seen training films in which such behavior by a stopped driver preceded gunshots from the car.

The driver of the Camry identified himself as David Keith Johnson and said that he did not have a driver's license. Smith then asked the other two passengers in the vehicle if either of them had a driver's license. Appellant, who was in the back seat, said that he did. Smith told appellant that if he could produce the license, he would be permitted to drive the car when the traffic stop was over. As appellant handed Smith his driver's license, Smith noticed a tattoo or drawing of two lightning bolts on appellant's forearm, with the letters "WP" between them. Smith, who said that he is half German and half African-American, testified that he believed that this symbol might indicate that appellant was a member of a hate group (the evidence shows that appellant and his companions are white). He added, "We've had several teletypes in the past year about hate groups wanting to basically kill officers on traffic stops to, you know, get rank in their organization. So those type of things popped in my head when I saw that." Smith also testified that appellant was sweating, even though the temperature was cool, and that his hands were shaking.

At this point, a second officer arrived at the scene. Smith ordered Johnson out of the car and told him that he was going to give him a warning ticket for failing to use a seatbelt. Smith asked Johnson about the symbol on appellant's arm, and Johnson told him that appellant had drawn it himself. Smith then asked Johnson for permission to search the car. Johnson consented to a search both orally and in writing.

Smith frisked Johnson for weapons for "officer safety." Smith then ordered appellant and the other passenger out of the car, and they were also frisked for weapons. Smith testified that as he patted down appellant, he felt a "small, hard device" in his front pocket. "It had a bowl on it." Smith testified that based on his training and experience, he immediately recognized the object as a "smoking device used to smoke narcotics." Smith handcuffed appellant, then removed the "smoking device" or pipe from appellant's pocket. When Smith asked appellant if he had anything else on his person, appellant answered, "[D]ig a little deeper." Taking this to be consent, Smith reached into the same pocket and withdrew a cigar containing what appeared to be marihuana. Smith told appellant that he was under arrest and then searched his other pockets. Smith found two small plastic bags containing what appeared to be marihuana. As Smith was placing appellant in his patrol vehicle, appellant asked him get his wallet out of his back pocket and look inside. When Smith did so, he found two more small plastic bags containing apparent marihuana.[1]

A "stop and frisk" is permissible under the Fourth Amendment if two conditions are met: (1) the stop or detention must be lawful, and (2) the police officer must reasonably suspect the

---

[1] Smith testified that after appellant was arrested, Johnson and the other passenger were allowed to walk home, leaving the Camry locked and lawfully parked at the curb. There is no evidence that the car was ever searched.

3

person detained is armed and dangerous. *Arizona v. Johnson*, ___ U.S. ___, 172 L.Ed.2d 694, 700 (2009); *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The first condition is not at issue in this case, as appellant does not contend that he was unlawfully detained. *See Johnson*, 172 L.Ed.2d at 700 (holding that officer may detain passenger of automobile pending inquiry into vehicular violation; officer need not have cause to believe that passenger is involved in criminal activity); *Maryland v. Wilson*, 519 U.S. 408, 415 (1977) (holding that officer making traffic stop may order passenger out of car pending completion of stop). Appellant contends, however, that Smith did not have a reasonable basis for suspecting that he was armed and dangerous. Appellant further contends that Smith's search of appellant's pocket exceeded the permissible scope of a weapons frisk.

To support his assertion that Smith had no reason to suspect that he was armed and dangerous, appellant argues he and his companions were shown to be fully cooperative and that they exhibited no aggressive behavior toward the officer. Appellant could add that this encounter took place in the afternoon rather than at night, there is no evidence that the stop took place in a dangerous part of town, and a second officer had arrived on the scene prior to the frisk. On the other hand, Smith testified that appellant's "demeanor is what basically caught my attention. . . . It's cool outside and he's sweating. He's shaking. His hands are shaking. That's the kind of stuff I look for." Smith was also aware of the marking on appellant's arm. Although there is no evidence that this was the symbol of an actual gang or race-based hate group, it was not unreasonable under the circumstances for Smith to suspect that it might be. Further, Smith testified that he had learned during his training that the occupants of cars had been known to stick their heads out of the window and stare at an officer, as Johnson did, before firing shots. Although this was Johnson's act, not

4

appellant's, it was not unreasonable for Smith to consider it in determining whether appellant, as Johnson's companion, was potentially armed and dangerous. Considering all the circumstances shown by the record, we conclude that Smith had an objectively reasonable basis for concluding that appellant might be armed and dangerous so as to justify frisking appellant for weapons before searching the car. Point of error one is overruled.

Appellant's second contention is that Smith's search exceeded the scope of a permissible weapons frisk. A police officer conducting a weapons frisk of a suspect's clothing may seize an object whose contour or mass makes its identity as contraband immediately apparent. *Minnesota v. Dickerson*, 508 U.S. 366, 375-76; *Griffin v. State*, 215 S.W.3d 403, 410 (Tex. Crim. App. 2006). This "plain feel" rule does not apply if the officer squeezed, slid, or otherwise manipulated the contents of the suspect's pocket before recognizing the object as contraband. *Dickerson*, 508 U.S. at 378. Appellant argues that the State failed to show that manipulation did not take place in this case. He asserts that Smith could not have recognized the pipe without manipulation because a concave bowl must be manipulated to be recognized as such.

Smith testified, "As I was patting him down for the weapons, in his left front pocket I felt a small—small, hard device. It had a bowl on it. I mean, I could—it was instant. I felt it. I knew it was a smoking device used to smoke narcotics." Smith also testified, "I frisked his person. And it's just a pat-down for weapons. I didn't manipulate anything. So when I just went down his pants, I could feel the pipe." Smith said that he recognized the object as a pipe based on his training and his experience of having discovered similar pipes on other occasions. Viewing this testimony in the light most favorable to the court's ruling, we conclude that the record supports the conclusion

5

that Smith immediately, and without further manipulation, recognized the object in appellant's pocket as contraband.  Point of error two is overruled.

The deferred adjudication order is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   January 12, 2010

Do Not Publish