NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2421
_____

UNITED STATES OF AMERICA

v.

DAVID BRIGGS

                          Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 08-cr-00706-001)
District Judge: Honorable Anne E. Thompson

_____

Submitted Under Third Circuit LAR 34.1(a)
on May 27, 2010

Before:  McKEE, Chief Judge, and
RENDELL, and STAPLETON , <u>Circuit Judges</u>

(Filed: June 1, 2010)

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

David Briggs appeals from his conviction and sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Briggs contends that the District Court erred in not granting his motion to suppress the firearm, in denying his motion to reconsider the suppression motion based on newly discovered evidence, and in enhancing his sentence by four levels for an obliterated serial number. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. We will affirm.

Because we write only for the parties who are familiar with the factual context and procedural history of this case, we recite only the facts that are relevant to our analysis.[1] On January 3, 2007, around 7 p.m., Officer Alan Williams was on patrol and saw Briggs park in the private parking lot attached to the apartment building where Williams lived. The lot contained 18 parking spots, which were each assigned to residents of the building. Trespassing was not permitted in the parking lot or around the apartment building, as indicated by a "private property, no trespassing" sign. App. 35. Williams knew all of the residents and knew that Briggs did not live there, nor was he authorized to park in that lot. Williams also knew that the building was in a high crime area, and knew that a car had been burglarized in the lot just a few hours earlier. Williams saw Briggs standing in the hallway between the interior and exterior door to the building, approached Briggs and

---

[1] The following facts summarize the police officers' testimony, as the District Court found them credible. App. 113. Although Briggs presents a different version of these facts, he does not contest the District Court's credibility determination.

2

asked him whom he was visiting. Briggs replied that he was visiting a woman named Sharon in apartment C-3. Williams informed Briggs that there was no apartment C-3, nor was there a resident named Sharon in the building. Briggs indicated that he was at the wrong building and began to walk away from Williams in the opposite direction from his car, prompting Williams to ask Briggs why he was leaving his car in the private parking lot. Briggs did not reply and began to look nervous, so Williams asked him to wait while he radioed for a warrant check. As a result of this check, Williams learned that Briggs had three outstanding arrest warrants. Williams arrested Briggs based on these warrants and charged him with trespassing.

While Williams was waiting for the results of the warrant check, Officers Eddie Raisin and Steve Love arrived and began visually inspecting the parking lot, including Briggs' car. Raisin looked through the window of Briggs' car with a flashlight and saw a black handgun sticking out from under the driver's seat. Raisin then removed the gun from the unlocked car.

## I. Motion to Suppress

Briggs challenges the legality of the initial stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 21 (1968), urging that Williams did not have reasonable suspicion that Briggs was engaged in criminal activity. Briggs maintains that he was "seized" for purposes of our analysis when Williams asked him to stay put while he completed the warrant check. He

contends that this illegal *Terry* stop made the "subsequent search of his car pursuant to his arrest" illegal. Appellant's Br. 14. We review the District Court's ruling on Briggs' suppression motion for clear error as to the Court's factual findings, but exercise plenary review over the legal findings. *United States v. Brown*, 595 F.3d 498, 514 (3d Cir. 2010).

We first note that contrary to Briggs' assertion, the search of his car was not conducted "pursuant to his arrest." Based on the officers' testimony, which the District Court found credible, the search was conducted before Briggs was arrested as part of the officers' check of all of the cars in the lot, because of the burglary that occurred earlier that day. However, to the extent that Briggs argues that the search was illegal because it was conducted as a result of what he characterizes as an invalid *Terry* stop (and this would not be an unreasonable argument, given that the search most likely would not have occurred had Williams not stopped Briggs and found him to be acting suspicious), we conclude that the *Terry* stop was valid.

In *Terry*, the Supreme Court held that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citation omitted). An investigatory stop is lawful when an officer reasonably suspects that an individual has committed or is committing a crime. *Arizona v. Johnson*, 129 S. Ct. 781, 781 (2009). To determine if reasonable suspicion exists, we look to the totality of the circumstances to see if the officer had a "particularized and

4

objective basis" for suspecting criminal activity. *United States v. Arvizu*, 534 U.S. 266, 277 (2002) (internal quotation marks omitted). The relevant question is not whether certain behavior is "innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10 (1989) (internal quotation marks omitted).

The District Court found that Briggs was lawfully stopped pursuant to *Terry*. App. 112. Looking at the totality of the circumstances, we do not find that the District Court erred in determining that Williams had reasonable suspicion to stop Briggs. Williams knew that a car had been burglarized in that parking lot earlier that day and that the parking lot was in a high crime area. Williams was aware that Briggs was not a resident of the apartment building and was not authorized to park in the lot. When Williams asked Briggs why he was there, Briggs gave Williams the name of a resident and apartment number that did not exist. Williams also noted that Briggs seemed nervous. All of these factors, in conjunction, support Williams' reasonable suspicion to conduct a *Terry* stop.

## II. Motion for Reconsideration

Briggs claims that even if the initial stop was lawful, his arrest based on the outstanding warrants was not, and the gun in his car should be suppressed because it was seized pursuant to this arrest. Briggs contends that he discovered relevant evidence

regarding the warrants after his motion to suppress was denied and asked the District Court to reconsider the motion in light of this evidence. A decision to deny a motion for reconsideration is discretionary, but we have plenary review over any legal determinations. *Le v. Univ. of Pa.*, 321 F.3d 403, 405-06 (3d Cir. 2003).

The newly discovered evidence Briggs points to is that the "warrants" were actually "warrant reports," which do not satisfy the statutory requirements for warrants.[2] The District Court denied Briggs' motion for reconsideration because the evidence regarding the warrants was available to Briggs prior to the hearing on the motion to suppress. "Evidence is not 'newly discovered' if it was actually known or could have been known by the diligence of the defendant or his counsel." *United States v. Cimera,* 459 F.3d 452, 461 (3d Cir. 2006) (internal quotation marks omitted). The District Court was correct that the evidence regarding the warrants was available to Briggs at the time of the hearing on the motion to suppress. Moreover, regardless of the validity of the warrants, the District Court held that the good faith exception to the exclusionary rule would apply. Further, as the government points out, the gun that Briggs asked the District Court to suppress was found in plain view by Officers Raisin and Love during an inspection of the parking lot before the warrants were discovered, and was not found during a search pursuant to Briggs' arrest.

---

[2] Briggs cites no case law indicating that "warrant reports" do not provide a valid basis for an arrest.

## III. Sentencing

Lastly, Briggs claims that the District Court erred in applying a four-point enhancement to his sentence based on an obliterated serial number on the firearm. United States Sentencing Manual § 2K2.1(b)(4)(B). The government was able to partially restore the serial number using chemicals. Briggs argues that because the serial number could be restored it was not obliterated and that therefore the enhancement should not apply. At sentencing, Briggs' counsel stated that "[y]ou cannot see the numbers on the surface of the gun. However, you can raise the numbers by the technique [the government] used." App. 177. Counsel further stated that it looked like the numbers were "worn down, removed" but the government "came up with a serial number . . . so obviously it wasn't obliterated." *Id*. at 177, 179. The serial number was not visible until the government restored it. The District Court did not err in applying the sentencing enhancement.

For the foregoing reasons we will AFFIRM the Judgment and Commitment Order of the District Court.