**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0180n.06

No. 08-4264

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Mar 23, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| **RUSSELL PORTER,** | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| *Defendant-Appellant.* | ) | |
| | ) | **O P I N I O N** |
| | ) | |
| | ) | |

BEFORE:    **COLE, GILMAN and WHITE**, **Circuit Judges.**

**COLE, Circuit Judge.**  At issue in this appeal is whether the district court correctly denied

Russell Porter's motion to suppress evidence uncovered during a patdown search.  Because the

district court applied the incorrect legal standard when ruling on Porter's motion, we **VACATE** and

**REMAND** so that it may consider the motion under the proper standard.

**I.**

Warren Police Department Narcotics Unit detectives spotted a grey Chevrolet Caprice parked

in the vicinity of 1653 Fremont Street in Warren, Ohio, on the afternoon of May 23, 2007.  The

detectives considered this to be a high-drug trafficking area.  They noticed a man, later identified as

Porter, sitting in the car's passenger seat in a sleeveless T-shirt counting what looked like a large

amount of money. The detectives continued to watch the vehicle and saw another man, later identified as Brian Poole, walk multiple times between the vehicle and one of the Fremont Street houses. Suspecting that a possible drug transaction was in progress, the detectives contacted a canine unit and requested that an officer be ready to proceed to the scene if a traffic stop ensued. Poole then drove off in the car, with Porter in the passenger seat, and the detectives followed.

The detectives observed the vehicle cross a double yellow line and pass another vehicle in a no-passing zone and pulled Poole over. They approached the stopped car and recognized the driver from previous encounters as Poole. Poole gave an inconsistent answer when asked about his travel plans. He was talking fast, appeared nervous, and sweat was dripping from his forehead and down his face. Porter also appeared nervous and was sweating.

Once the canine officer arrived at the scene, she requested that Poole and Porter exit the car so her dog could conduct a sniff. When Porter exited, a detective commenced a patdown for weapons, during which a plastic baggie fell from Porter's shorts onto the ground. Inside the baggie were 55.9 grams of crack and 125 grams of cocaine.

The Government filed a two-count indictment against Porter. It charged him with intentionally possessing with intent to distribute approximately 55.9 grams of crack in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2, and intentionally possessing with intent to distribute approximately 125 grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2. Porter filed a motion to suppress the evidence found during the patdown search, arguing that officers lacked any reason to believe that he was armed and dangerous. After a suppression hearing, the district court entered an oral order denying the motion. The court concluded

that because the officers could constitutionally conduct a canine sniff of the vehicle, and order the driver and passenger to exit the vehicle, the subsequent patdown search of Porter also was constitutional. The district court found that there was no need to determine whether there was reasonable suspicion that Porter was armed and dangerous:

> [T]he court finds it's not necessary to find that there was reasonable belief to believe the passenger was armed and dangerous. I don't believe that test applies in this case because of the legitimate use of the canine, and then the right of the officers to remove the occupants of the vehicle to complete the canine search and also the right of the officers to protect themselves during such an exercise and without the necessity of finding that the defendant was armed and dangerous.

(Dist. Ct. Doc. No. 41 at 86-87.)

Porter pleaded guilty to both counts, reserving his right to appeal the validity of the patdown search, which he does now.

## II.

The district court misidentified the appropriate legal standard. In the context of a traffic stop, to justify "a patdown of the driver or a passenger[,] . . . just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009). Rather than decide for ourselves whether the detectives had reasonable suspicion that Porter was armed and dangerous, we remand the issue to the district court so that it may consider the question in the first instance.

**III.**

We **VACATE** and **REMAND** this case with instructions that the district court conduct an evidentiary hearing in connection with Porter's motion to suppress using the legal standard articulated in *Arizona v. Johnson*.