[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2011
JOHN LEY
CLERK

No. 11-11569
Non-Argument Calendar
_____

D.C. Docket No. 0:10-cr-60277-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER BROOKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(November 22, 2011)

Before TJOFLAT, EDMONDSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Christopher Brooks appeals his conviction for possessing a firearm and

ammunition after having been convicted of a crime punishable by imprisonment

for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). The sole

issue Brooks presents on appeal is whether the district court erred in denying his

motion to suppress the firearm and ammunition detectives of the Broward County,

Florida Sheriff's Office seized from his person in patting him down following a

traffic stop. We find no error and affirm.

The district court denied Brooks's motion to suppress following an

evidentiary hearing at which it heard the testimony of the detectives, Perez and

Gonazlez, who seized the firearm and ammunition, Goodwin, the driver of the car

that was stopped, and Brooks, Goodwin's passenger. We accept the district

court's findings of fact unless clearly erroneous. *United States v. Ramirez-Chilel*,

289 F.3d 744, 749 (11th Cir. 2002). The facts the district court found, which we

recite below, are supported by the record; hence, we accept them.

> On October 20, 2010, at about 5:00 P.M., Detective Perez,
> Detective Gonzalez and Detective Anderson were traveling in an
> unmarked police vehicle. They were experienced members of the
> Broward Sheriff's Office Street Crime Unit and were dressed in black
> tactical uniforms. A blue 2009 Chevrolet Malibu was observed
> traveling northbound on NW 27th Avenue in Pompano Beach, Florida.
> The four-door Malibu had extremely dark colored tint on its windows
> so that one could not see the occupants. The license tag was also
> partially obscured; the last digit was partially covered so that it was
> unclear whether the digit was a 5, 9 or S. Detective Gonzalez
> activated his blue lights, and the Malibu, which was driven by
> Goodwin, stopped about one block later.
> Gonzalez approached the driver's side of the Malibu; Perez and
> Anderson approached the passenger side. The windows were up, and

the deputies could not see into the Malibu.  Perez yelled several times to the occupants of the Malibu to lower the windows; they did not comply.  Gonzalez contacted Goodwin; Perez opened the front passenger door and observed the [Brooks], who was not wearing a seat belt.  Both Gonzalez, on the driver's side, and Perez, on the passenger's side, smelled a very strong odor of burnt marijuana emanating from the Malibu, once the doors were opened.  Both Gonzalez and Perez are experienced narcotics detectives.  Goodwin consented to a search of his person and the car.  Perez asked [Brooks] for identification, and [Brooks], who was sweating and whose hands were shaking, produced a criminal registrant card that he had received two months earlier when he had been released from serving a prison sentence for Possession with Intent to Deliver Cocaine, Aggravated Assault and Possession of a Firearm in the Commission of a Felony.  [

Brooks denied having anything illegal in the car, and he exited upon Perez's request. While exiting, [Brooks] held both arms up over his head. He also consented to a search of his person and the car. Perez then attempted to conducted a pat-down frisk, but [Brooks] attempted to flee.  Perez tripped him (or [Brooks] tripped over Perez's strategically placed foot), and as [Brooks] fell to the ground, a firearm fell from his waistband.   [Books] resist[ed] the efforts of the detectives, as they were attempting to restrain him.  Anderson's striking him did not curb [Brooks] resistance; a taser was used.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  However, the Fourth Amendment does not prevent an officer from conducting a brief, investigatory stop, when the officer has a reasonable, articulable suspicion that criminal activity is afoot.  *United States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000).  In a traffic stop, an officer may temporarily detain an automobile and its occupants pending inquiry into a vehicular violation.  *Arizona v. Johnson*, 555 U.S. 323, ___, 129 S.Ct. 781, 784,

3

172 L.Ed.2d 694 (2009). In the weighty interest of officer safety, once a motor vehicle has been lawfully detained for a traffic violation, the officer may order the driver, as well as the passengers, out of the car. *Johnson*, 555 U.S. at ___, 129 S.Ct. 786-787. Once outside the vehicle, the officer may pat down the driver or the passengers if the officer reasonably believes they might be armed and dangerous. *Id*. at ___, 129 S.Ct. at 787; *see Michigan v. Long*, 463 U.S. 1032, 1047, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (stating that during a *Terry* stop an officer may take necessary measures to determine if a person is carrying a weapon, when he has a reasonable belief that the person is armed and dangerous). During the traffic stop, the officer can exercise "unquestioned command of the situation," including limiting the movement of occupants in ways that might jeopardize his safety. *Brendlin v. California*, 551 U.S. 249, 258, 127 S.Ct. 2400, 2407, 168 L.Ed.2d 132 (2007) (quotations omitted).

In this case, the detectives had reasonable suspicion that criminal activity was afoot after they stopped the car and smelled burnt marijuana. After Brooks denied having anything in the car, he voluntarily got out, raised his arms over his head and consented to a pat down. Then he fled and resisted arrest. At this point, and once the firearm was discovered, the detectives had ample authority to arrest.

AFFIRMED.