FILED
COURT OF APPEALS
DIVISION II

2013 APR -9 AM 9: 01

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42072-4-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| HARVEY LEROY COUSINS, II, | |
| Appellant. | |

VAN DEREN, J. — Harvey Leroy Cousins, II, appeals his conviction for unlawful possession of a controlled substance (methamphetamine). He argues that a police officer ordering him out of a vehicle and inquiring of his identity while he was a passenger in a traffic stop was an unlawful seizure and, thus, evidence found in a subsequent consensual search of his backpack should have been suppressed as "fruit" of the unlawful seizure. We hold that the officer's order for Harvey to exit the vehicle and to produce his identification was a lawful seizure justified by officer safety considerations. Thus, the consensual search of his backpack was not tainted by prior illegality.[1] We hold that the trial court did not err in denying Harvey's

---

[1] We do not address an issue Harvey raises for the first time on appeal, i.e., whether Harvey's consent to search his backpack was invalidated because the officer did not tell Harvey that he could deny consent to search the backpack. Harvey failed to develop or support his argument on this issue by citation to authority in his brief. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. RAP 10.3(a)(6); *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

motion to suppress evidence found during the search of his backpack. Accordingly, we affirm.

FACTS

Shortly after midnight on November 4, 2010, Kitsap County Deputy Sheriff John Stacy stopped a pickup truck for a defective headlight. Joshua Cousins was the driver of the pickup truck and his brother, Harvey,[2] was a passenger. When Stacy approached the pickup truck, he noticed two rifles sitting between the driver and passenger.[3] Stacy also noticed a box of ammunition near the rifles. Stacy ordered both the driver and passenger to exit the pickup truck and walk to the back of the pickup truck. Stacy recognized the passenger, Harvey, from previous contacts.

Port Orchard Police Officer Beth Deatherage arrived to back-up Stacy. Stacy asked Deatherage to identify the passenger, even though Stacy had already determined that the passenger was likely Harvey. Stacy relayed Harvey's name to dispatch, which informed him that Harvey was wanted on an outstanding arrest warrant for driving with a suspended license. Stacy arrested Harvey on the warrant. During a search of Harvey incident to his arrest, Stacy found a glass pipe in Harvey's jacket. Stacy informed Harvey of his *Miranda*[4] rights.

Stacy asked Joshua for permission to search the pickup truck, which he granted. During the search, Stacy located a backpack on the passenger-side floorboard where Harvey had been sitting. Joshua said the backpack was Harvey's. Harvey gave Stacy permission to search the backpack. Inside the backpack, Stacy found a black plastic bag containing two marijuana plants

---

[2] For clarity, we refer to the Cousins brothers by their first names. In doing so, we mean no disrespect.

[3] The rifles were unloaded and properly transported.

[4] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and a black metal lockbox. Harvey admitted that the lockbox was his and gave Stacy permission to search it. Stacy opened the lockbox using a key that he found on Harvey's keychain. Inside the lockbox, Stacy found a second pipe, a sandwich baggie containing marijuana, and a small baggie containing methamphetamine.

The State charged Harvey with unlawful possession of a controlled substance (methamphetamine). Before trial, Harvey unsuccessfully moved to suppress the drug evidence as "fruit" of an unlawful seizure. The State argued that Stacy's order for Harvey to step out of the pickup truck and identify himself was justified by officer safety considerations. During argument, Harvey's counsel conceded that Stacy's order to Joshua and Harvey to exit the vehicle was justified by officer safety concerns. But Harvey's counsel argued that, unlike the order to exit the vehicle, Stacy's request for Harvey to identify himself was not related to officer safety. The trial court conducted a CrR 3.6 suppression hearing, in which Stacy and Joshua testified. The trial court denied Harvey's motion to suppress the evidence, concluding that Stacy's request for identification from Harvey was appropriate and lawful given the legitimate officer safety concerns. At the conclusion of a stipulated facts trial, the trial court found Harvey guilty as charged and sentenced him to a standard range sentence.

Harvey timely appeals.

ANALYSIS

Harvey argues that the trial court erred when it denied his motion to suppress evidence found during a consensual search of his backpack because that evidence was obtained as a result of an unlawful seizure. He also argues for the first time on appeal that his consent to search the backpack was invalid because he was not advised that he could refuse to give his consent. We

disagree. We hold that Harvey was not unlawfully seized and, thus, the evidence found during the subsequent search of his backpack was not "fruit" of an unlawful seizure.

I.     STANDARD OF REVIEW

We review the trial court's denial of a CrR 3.6 suppression motion to determine "whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Here, Harvey does not challenge the trial court's findings of fact; thus, we consider them verities on appeal. *See State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011). Whether undisputed facts constitute a violation of article I, section 7 of the Washington State Constitution is a question of law. *State v. Rankin*, 151 Wn.2d 689, 694, 92 P.3d 202 (2004). We review the trial court's conclusions of law de novo. *Garvin*, 166 Wn.2d at 249.

II.    LAWFUL SEIZURE

Harvey alleges that he was seized in violation of article I, section 7 of the Washington State Constitution when he was ordered out of a pickup truck and asked to identify himself during a traffic stop in which he was a passenger. We disagree.

The Washington State Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. "Our analysis under article I, section 7 requires us to determine 'whether the State unreasonably intruded into the defendant's private affairs.'" *State v. Mendez*, 137 Wn.2d 208, 219, 970 P.2d 722 (1999) (internal quotation marks omitted) (quoting *State v. Myrick*, 102 Wn.2d 506, 510, 688 P.2d 151 (1984)), *abrogated on other grounds by Brendlin v. California*, 551 U.S. 249, 255, 259 n.5, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007).

"[A] warrantless search or seizure is considered per se unconstitutional unless it falls within one of the few exceptions to the warrant requirement." *Rankin*, 151 Wn.2d at 695. The recognized exceptions include "consent, exigent circumstances, searches incident to a valid arrest, inventory searches, plain view searches, and investigative stops." *State v. Chacon Arreola*, 176 Wn.2d 284, 292, 290 P.3d 983 (2012). "If police unconstitutionally seize an individual prior to arrest, the exclusionary rule calls for suppression of evidence obtained via the government's illegality." *State v. Harrington*, 167 Wn.2d 656, 664, 222 P.3d 92 (2009).

A. Harvey Was Seized

First, we determine whether a warrantless search or seizure has taken place and, if it has, whether it was justified by an exception to the warrant requirement. *Rankin*, 151 Wn.2d at 695. A person is seized when a reasonable person would have believed that he was not free to leave or to decline the officer's requests or otherwise terminate the encounter. *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997). "[I]t is now well established that '[f]or the duration of a traffic stop . . . a police officer effectively seizes everyone in the vehicle.'" *State v. Marcum*, 149 Wn. App. 894, 910, 205 P.3d 969 (2009) (second and third alterations in original) (internal quotation marks omitted) (quoting *Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 172 L. Ed. 2d 694 (2009)); *see also State v. Brown*, 154 Wn.2d 787, 796-98, 117 P.3d 336 (2005) (holding that a passenger was clearly seized when he was asked to identify himself for investigative purposes so the officer could conduct a warrants and records check).

Here, Harvey was ordered out of the pickup truck in which he was a passenger and asked to provide identification. At the suppression hearing, the trial court concluded that Harvey was briefly seized while the officer identified him. Because no reasonable person in Harvey's position would have believed that he was free to decline Stacy's request or terminate the

5

encounter, we affirm the trial court's conclusion and hold that Harvey was seized when he was ordered out of the truck and asked to identify himself. *See Brown*, 154 Wn.2d at 798; *Marcum*, 149 Wn. App. at 910.

B. Seizure Justified by Objective Reasonable Concern for Officer Safety

Next we determine whether the seizure was lawful. Harvey and the State dispute whether Harvey's seizure was justified by officer safety concerns. We agree with the State and hold that Stacy was justified in ordering Harvey out of the pickup truck and away from the rifles and ammunition and asking for his identification.

"A police officer should be able to control the scene and ensure his or her own safety, but this must be done with due regard to the privacy interests of the passenger, who was not stopped on the basis of probable cause by the police." *Mendez*, 137 Wn.2d at 220. An officer must "be able to articulate an objective rationale predicated specifically on safety concerns . . . for ordering a passenger to stay in the vehicle or to exit the vehicle." *Mendez*, 137 Wn.2d at 220. An officer's objective rationale should be evaluated based on the circumstances present at the scene of the traffic stop, including: "the number of officers, the number of vehicle occupants, the behavior of the occupants, the time of day, the location of the stop, traffic at the scene, affected citizens, or officer knowledge of the occupants." *Mendez*, 137 Wn.2d at 220-21.

"[P]assengers are unconstitutionally detained when an officer requests identification 'unless other circumstances give the police independent cause to question [the] passengers.'" *Rankin*, 151 Wn.2d at 695 (second alteration in original) (quoting *State v. Larson*, 93 Wn.2d 638, 642, 611 P.2d 771 (1980)); *see Brown*, 154 Wn.2d at 796. Although not present in *Rankin*, our Supreme Court suggested that an officer's request for identification from a vehicle passenger may be permitted if reasonably related to officer safety issues. 151 Wn.2d at 699 n.5. "If an

6

officer felt his safety was at risk, he might need to know with whom he is interacting." *Rankin*, 151 Wn.2d at 705 (Fairhurst, J., concurring) (describing circumstances that might justify an officer's request for a passenger's identification).

In *Mendez*, our Supreme Court held that pursuing and ordering a vehicle passenger to remain in the vehicle during a traffic stop was an unlawful seizure because it was not based on an objectively reasonable safety concern or a substantial probability that criminal conduct has occurred or is about to occur. 137 Wn.2d at 212-13, 220, 224. The officers' testimony was that the passenger did not do anything to make them fearful for their safety except run away from a traffic stop in broad daylight. *Mendez*, 137 Wn.2d at 226.

Here, Stacy testified that he ordered both occupants to exit the vehicle for his safety:

[THE STATE]: So why did you ask them to get out of the vehicle?
[STACY]: Well, it was—it was after midnight, and it was dark. I was by myself. And there were two people in the truck with rifles, and I didn't feel safe standing there talking to them with both of those guns right there with the ammunition that close. So I asked them to step out for my safety.

Report of Proceedings (RP) (Apr. 5, 2011) at 9. Stacy testified that he was concerned for his safety although neither Joshua nor Harvey made any furtive movements. When Deatherage arrived to back-up Stacy, Stacy directed Deatherage to identify Harvey.

Here, we are presented with facts demonstrating that the request for Harvey's identification was reasonably related to officer safety. At the suppression hearing, Stacy testified that he sought to identify Harvey because he was concerned for his safety in releasing Harvey back into the vehicle with the firearms and ammunition:

[THE STATE]: Did you run [Harvey]'s name over your mic[rophone]?
[STACY]: Yes.
[THE STATE]: And why did you do that?
[STACY]: Well, again, it's the time of the night and they had the guns in there. If I was going to release them back into the truck with me still in the area, I

wanted to make sure they weren't convicted felons or if there was any reason they shouldn't have those rifles that time of night. I didn't want to go back to my car and leave and, you know, end up getting shot. I'm not saying they were going to shoot me; it's just officer safety. I mean, at that time of night, I want to make sure if I'm releasing someone with guns that they're not convicted felons.

. . . .

[DEFENSE COUNSEL]: Okay. So you did recognize Harvey, but you still wanted to have his [identification] and run him; that's correct?

[STACY]: Yes.

[DEFENSE COUNSEL]: And why is that?

[STACY]: Because I couldn't remember what I—what I'd dealt with Harvey before, and I wasn't sure if he was a convicted felon or not. I wanted to make sure that they—I had dealt with Harvey before and I could not remember—I mean, I deal with literally hundreds of thousands of people.

You know, again, it was late at night and I knew—I knew I knew him from some other contact, and I wanted to make sure he wasn't a convicted felon.

RP (Apr. 5, 2011) at 10-11, 21-22. Stacy also testified that his safety concern was not alleviated by ordering Harvey and Joshua out of the pickup truck:

[DEFENSE COUNSEL]: Okay. So would it be fair to say that once they exited the vehicle and were away from the unloaded hunting rifles, that they no longer posed a safety threat because they weren't near the weapons, you had them away from the car. Were they still a safety threat to you?

[STACY]: Absolutely.

[DEFENSE COUNSEL]: And it's your testimony one more time that you wanted my client, Harvey Cousins [identified] because you wanted to know if he was a convicted felon[ ]; is that correct?

[STACY]: Not just that, but I wanted to see if there w[ere] any warrants that would warrant me to release him back to the truck with ammunition and rifles.

Again, I can't stress the importance of, you know, being—letting two people go back into a truck after midnight with a vehicle with two rifles and ammunition sitting on the passenger seat. I did not feel safe allowing them to go back there until I knew who they were and if they were convicted felons.

Also, when we run their names, it will come back if there[ are] any officer safety warnings. We have a lot of people in Kitsap County that ha[ve] officer safety warnings about them, which means they are violent offenders that can hurt police officers.

RP (Apr. 5, 2011) at 24-25.

On this testimony and these facts, we hold that Stacy's safety concern was objectively reasonable and he was justified in ordering Harvey out of the vehicle and requiring Harvey to

identify himself before releasing Harvey back into the vehicle with access to the rifles and ammunition.[5] Thus, we hold that the trial court did not err in concluding that Stacy's order for Harvey to exit the vehicle and produce identification was a lawful seizure based on officer safety concerns.

Harvey argues that all the evidence found during the subsequent consensual search of his backpack should be suppressed as "fruit" of an unlawful seizure. Because Harvey's seizure was lawful, it did not taint the consensual search of Harvey's backpack. *See Harrington*, 167 Wn.2d at 664. Thus, the trial court correctly denied Harvey's motion to suppress the evidence.

III.    CONCLUSION

Stacy's order for Harvey to exit the pickup truck and request for Harvey to identify himself was objectively reasonable based on concern for officer safety and, thus, constituted a lawful seizure. Because the seizure was lawful, it did not taint the subsequent consensual search of Harvey's backpack. Thus, the evidence recovered during the search of Harvey's backpack was lawfully obtained. Accordingly, the trial court correctly denied Harvey's motion to suppress

---

[5] Moreover, Harvey's counsel conceded at the suppression hearing that Stacy's order for Harvey and Joshua to exit the vehicle was justified by officer safety concerns.

No. 42072-4-II

the evidence. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
VAN DEREN, J.

We concur:

_____
PENOYAR, J.

_____
WORSWICK, C.J.