NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4342
_____

UNITED STATES OF AMERICA

v.

ERROL NELSON,
                              Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. No. 1-10-cr-00012-001)
District Judge:  Wilma Lewis
_____

Submitted Under Third Circuit LAR 34.1(a)
May 7, 2012

Before:  CHAGARES, JORDAN, and COWEN, *Circuit Judges*.

(Filed: May 16, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Errol Nelson was convicted of various firearms offenses in the District Court of

the Virgin Islands, and he now challenges that Court's ruling denying his pre-trial motion

to suppress the firearm that police confiscated from him.  He also asserts that his

prosecution under both territorial and federal law violates the Double Jeopardy Clause of

the United States Constitution. Finally, he claims that the government failed to introduce evidence sufficient to support the jury's verdict. For the following reasons, we will affirm his conviction and the denial of his motion to suppress.

## I. Background[1]

### A. *Facts*

On February 4, 2010, Officer Uston Cornelius, a veteran of the Virgin Islands Police Department ("VIPD"), received a radio transmission from the VIPD Central Dispatch informing him of a domestic disturbance at a location known as the Orange Grove Villas on the Island of St. Croix. The transmission indicated that Nelson had been identified in a 9-1-1 call as being involved in the disturbance. Officer Cornelius was familiar with Nelson "from the streets" and knew that Nelson had "served time." (Joint Appendix at 227; Supplemental Appendix at 8.)[2] Officer Cornelius also received a radio message from Officer Luis Ortiz of the VIPD, stating that there was an outstanding warrant for Nelson's arrest.

After hearing the initial report from Central Dispatch, Officer Cornelius headed towards the Orange Grove Villas. When he arrived, he immediately identified Nelson walking in a parking area near the apartments. At the time, there were no other police officers present. After parking his police cruiser, Officer Cornelius, who was unarmed,

---

[1] In recounting the facts, we rely on the District Court's findings with respect to Nelson's motion to suppress, to the extent they are not clearly erroneous. *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2010).

[2] We will hereafter refer to the Joint Appendix as "JA," and to the Supplemental Appendix as "SA."

2

left the car and approached Nelson. He said that he was responding to a report of a domestic disturbance and asked Nelson to put his hands on the cruiser to permit a frisk to ensure that Nelson was unarmed. When Officer Cornelius attempted to guide Nelson to the cruiser, Nelson brushed Officer Cornelius's hand aside and a struggle ensued. During the struggle, Officer Cornelius heard a hard object fall to the ground, which he subsequently identified as a chrome handgun. Officer Jason Viveros arrived at the scene during the wrestling and actually saw the gun fall from Nelson's waistband.

Eventually, Officer Cornelius placed Nelson in handcuffs, searched him, and advised him of his *Miranda* rights. After Nelson was read his rights, he said "[l]ook Cornelius, I didn't want to go against the vehicle because I [knew] I had the gun on me." (JA at 228.)

B. *Procedural History*

On March 16, 2010, a grand jury returned a four-count indictment against Nelson: Count One charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2), Count Two with being in unauthorized possession of a firearm, in violation of V.I. Code Ann. tit. 14, § 2253(a), Count Three with possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B), and Count Four with possessing a firearm in a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(1)(B).

On September 23, 2010, Nelson moved to suppress "any and all statements and evidence obtained in violation of his Fourth and Fifth Amendment[] rights." (JA at 221.) The District Court conducted a hearing and subsequently denied the motion on October 6,

3

2010. In doing so, the Court found that Officer Cornelius conducted a *Terry* stop when he attempted to guide Nelson towards the police cruiser, and that "the *Terry* stop may have 'ripened' into an arrest" after Officer Cornelius placed Nelson in handcuffs. (JA at 230.) The Court decided that Officer Cornelius had reasonable suspicion to justify the *Terry* stop. It also found that the frisk Officer Cornelius tried to perform during the *Terry* stop was objectively reasonable and supported by probable cause because Officer Cornelius was unarmed when he responded to the potentially violent domestic disturbance, was the only officer at the scene, and was aware that Nelson had a prior criminal history. Finally, the District Court held that Nelson's statement was admissible because he volunteered it after being read his *Miranda* rights.

After the trial, which commenced on February 24, 2010, the jury returned a verdict convicting Nelson on Counts One, Two, and Three. He filed a timely notice of appeal.

## II.    **Discussion**[3]

### A.    *Sufficiency of the Evidence*[4]

Nelson first argues that the evidence presented at trial was insufficient to sustain

---

[3] The District Court had jurisdiction pursuant to 48 U.S.C. § 1612 and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[4] In reviewing Nelson's challenge to the sufficiency of the evidence we must "view the evidence in the light most favorable to the prosecution and sustain the verdict unless it is clear that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Walker*, 657 F.3d 160, 171 (3d Cir. 2011) (citations and internal quotation marks omitted). "We examine the totality of the evidence, both direct and circumstantial, and only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt will we reverse a jury verdict for insufficiency of the evidence." *Id.* (citations and internal quotation marks omitted).

his conviction on Counts One, Two, and Three. His primary argument with respect to each of those counts is that the government failed to prove that he possessed a firearm.[5] We disagree.

The record contains sufficient evidence to sustain the convictions. Officer Cornelius testified during trial that, when he struggled with Nelson, a chrome handgun in Nelson's possession fell to the ground. Officer Viveros corroborated that testimony, stating that, when he arrived at the Orange Grove Villas, he observed a handgun fall from the waistband of Nelson's pants. That evidence, which we must "view … in the light most favorable to the [government]," provides a sufficient basis for a rational jury to conclude that Nelson possessed a firearm at the time of his confrontation with Officer Cornelius.[6] *Walker*, 657 F.3d at 171. Moreover, if there was any doubt as to whether Nelson had a gun at the time of his arrest, his subsequent statement to the police made it eminently clear. Without prompting, he told Officer Cornelius "I didn't want to go

---

[5] Counts One, Two, and Three each require the government to prove, beyond a reasonable doubt, that Nelson possessed a firearm. *See* 18 U.S.C. § 922(g) (making it a crime for any person convicted of a felony to "*possess in or affecting commerce…* any firearm … ." (emphasis added)); 18 U.S.C. § 922(k) (making it a crime for any person to knowingly "*possess … any firearm* which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce" (emphasis added)); V.I. Code Ann. tit. 14, 2253(a) (making it a crime to, "unless otherwise authorized by law, … *possess*[] … openly or concealed *any firearm* … ." (emphasis added)).

[6] Nelson asserts that Officer Cornelius' credibility is called into question because he changed his testimony to say at trial that he not only heard the gun fall but that he saw it drop. (Appellant's Br. at 8 (citing JA at 79).) That argument is unavailing however, because in determining whether the evidence is sufficient to sustain Nelson's conviction, we may not "weigh evidence or determine the credibility of witnesses." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992) (citations omitted).

5

against the vehicle, because I [knew] I had the gun on me." (SA at 12.) The record thus contains ample evidence from which a rational jury could conclude that Nelson possessed a firearm at the time of his arrest, and his sufficiency-of-the-evidence challenge fails.

B.      *Double Jeopardy*[7]

Nelson also argues that because "[t]he territorial and federal firearms counts in this case represent a single offense" (Appellant's Br. at 9), his prosecution for both federal and territorial firearms crimes violates the Double Jeopardy Clause. He is mistaken.

The Double Jeopardy Clause of the Fifth Amendment provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause "embodies two vitally important interests":

> The first is the deeply ingrained principle that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty. The second interest is the preservation of the finality of judgments.

*Yeager v. United States*, 129 S. Ct. 2360, 2365-66 (2009) (citations and quotation marks omitted). Consistent with those principles, we have held that "[i]f … two offenses [for which a defendant is charged] grow out of the same occurrence then multiple punishments are impermissible." *United States v. Hodge*, 211 F.3d 74, 78 (3d Cir. 2000)

---

[7] We exercise plenary review over double jeopardy challenges. *See United States v. Ciancaglini*, 858 F.2d 923, 926 (3d Cir. 1988).

(citation and internal quotation marks omitted). In order to determine whether the two offenses grow out of the same occurrence, we conduct the test articulated in *Blockburger v. United States*, which asks "whether each provision requires proof of a fact which the other does not."[8] 284 U.S. 299, 304 (1932). In performing that test, we compare the elements of the offense "*in the abstract*, without looking to the facts of the particular case." *Gov't of the V.I. v. Joseph*, 765 F.2d 394, 396 (3d Cir. 1985) (citations omitted).

The federal firearms provisions charged in the indictment required the government to prove, among other things, that Nelson knowingly possessed a firearm "in or affecting commerce," 18 U.S.C. § 922(g), or "in interstate or foreign commerce," 18 U.S.C. § 922(k). In contrast, the government had to make no such showing in order to prove Nelson's guilt under V.I. Code Ann. tit. 14, § 2253(a). Moreover, unlike the federal statutes, in order to prove that Nelson was guilty of violating § 2253(a), the government had to demonstrate that he was carrying an operable firearm[9] without authorization by law. *See* V.I. Code Ann. tit. 14, § 2253(a) (prohibiting possession of firearm "unless

---

[8] "[T]he Virgin Islands and the federal government are considered one sovereignty for the purposes of determining whether an individual may be punished under both Virgin Islands and United States statutes for a similar offense growing out of the same occurrence." *Gov't of the V.I. v. Brathwaite*, 782 F.2d 399, 406 (3d Cir. 1986) (citation omitted).

[9] Unlike § 2253(a), the federal firearms statute does not require the government to prove that a firearm is operable. *See* 18 U.S.C. § 921(a)(3) (defining "firearm" as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm."); *United States v. Adams*, 137 F.3d 1298, 1300 (11th Cir. 1998) (noting that the "government need not show that a firearm is operable for purposes of § 922(g)(1)," and that "every circuit addressing the issue has reached the same conclusion.").

7

otherwise authorized by law"); *United States v. Tyson*, 653 F.3d 192, 199 n.11 (3d Cir. 2011) ("A conviction for unauthorized possession of a firearm under 14 V.I.C. § 2253(a) requires that the firearm at issue be operable."); *United States v. Blyden*, 740 F. Supp. 376, 380 (D.V.I. 1990) (noting that "under the law of the Virgin Islands, V.I. Code Ann. tit. 14, § 2253(a) and V.I. Code Ann. tit. 23, § 451(d), [a] firearm must be operable").

Therefore, because Nelson's conviction under the federal firearms provisions requires proof of an element not required by the territorial firearms provision, and his conviction under the territorial firearms provision requires proof of an element not required by the federal firearms provisions, Nelson's prosecution did not violate the Fifth Amendment's Double Jeopardy Clause. *See Hodge*, 211 F.3d at 78 (holding that because robbery under territorial statute did not require the government to prove defendant's offense "affect[ed] commerce," as required by the federal robbery statute, and, unlike the federal robbery statute, the territorial robbery statute required the government to prove that defendant "displayed, used or threatened to use a dangerous weapon," defendant's conviction for both federal and territorial offenses did not violate the Double Jeopardy Clause).

C.    *Motion to Suppress*[10]

Lastly, Nelson disputes the District Court's October 6, 2010 order denying his motion to suppress both the firearm confiscated from him at the time of his arrest and the

---

[10] "We review a district court's order denying a motion to suppress under a mixed standard of review. We review findings of fact for clear error, but we exercise plenary review over legal determinations." *Lewis*, 672 F.3d at 236-37 (citation omitted).

8

incriminating statement he made to Officer Cornelius. Nelson asserts that a seizure

occurred when Officer Cornelius placed a hand on him to guide him toward the police

cruiser and that, at the time, Officer Cornelius did not have a reasonable, articulable

suspicion that Nelson was engaged in any criminal activity. He also claims that the

District Court inappropriately admitted into evidence the statements he made to Officer

Cornelius before[11] he was read his *Miranda* rights. We disagree.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth

Amendment, it must be effectuated with a warrant based on probable cause." *United

States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (citation omitted). However,

under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may "conduct a brief, investigatory

stop when the officer has a reasonable, articulable suspicion that criminal activity is

afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

---

[11] In his brief, Appellant asserts that he "filed a motion to suppress the … statement [he] allegedly made to Officer Cornelius while they were traveling in the police unit *before* [he] was read his Miranda rights." (Appellant's Br. at 13 (emphasis added).) However, during the suppression hearing, the District Court found that Nelson made the incriminating statement to Officer Cornelius after he was advised of his *Miranda* rights. (*See* JA 228 ("Following advisement of his rights, Defendant allegedly said 'Look Cornelius, I didn't want to go against the vehicle because I knew I had the gun on me.'").) However, we need not decide exactly when the incriminating statement was made because, as discussed below, the statement was voluntary and therefore admissible against Nelson, regardless of when made.

With those principles in mind, we conclude that the District Court appropriately denied Nelson's motion to suppress the firearm. Officer Cornelius knew, based on Officer Ortiz's report, that there was an outstanding warrant for Nelson's arrest. That knowledge alone provided a more-than-adequate justification for Officer Cornelius to conduct a *Terry* stop. *See Arizona v. Johnson*, 555 U.S. 323, 326 (2009) (noting that a "stop and frisk" is permissible in an "on-the-street encounter" when police officer reasonably suspects that person "is committing or *has committed* a criminal offense.") (emphasis added); *see also United States v. Tellez*, 11 F.3d 530, 532-33 (5th Cir. 1993) (holding that police officer had reasonable suspicion justifying *Terry* stop based on his knowledge of outstanding warrant for defendant's arrest). Thus, the District Court appropriately found that Officer Cornelius had a reasonable, articulable suspicion that Nelson had engaged in criminal activity, thereby justifying the *Terry* stop.

The District Court also appropriately denied Nelson's motion to suppress the statement he made to Officer Cornelius. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), "a statement made by a suspect in response to custodial interrogation after he or she has elected to remain silent is inadmissible at trial." *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006). However, "the special procedural safeguards outlined in *Miranda*" are required only where a suspect is taken into custody and "subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Id.* at 299-300 (quoting *Miranda*, 384 U.S. at 478).

Here, Nelson was in the custody of the VIPD after Officer Cornelius arrested him, but there is no evidence that Officer Cornelius or any other police officer prompted Nelson to admit that he was carrying a firearm. The record shows that he freely and voluntarily said, "I didn't want to go against the vehicle, because I [knew] I had the gun on me." (JA at 228.) Because Nelson made that statement of his own volition, the District Court did not err by allowing the government to admit the statement against him.

## III. Conclusion

For the foregoing reasons, we will affirm.

11