J-A28030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CE'JII KANO CAMPBELL | : | |
| | : | |
| Appellant | : | No. 360 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 5, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No:  CP-23-CR-0005154-2021

BEFORE:   OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                              **FILED APRIL 1, 2024**

Appellant, Ce'jii Kano Campbell, appeals from the January 5, 2023 judgment of sentence imposing an aggregate 30 to 60 months of incarceration for firearms not to be carried without a license and possession of a firearm prohibited.  After review, we affirm.

The trial court summarized the pertinent facts:

[O]n October 5, 2021, at approximately 6:00 p.m., [Officer Geoffrey Walls] was on patrol near the intersection of West Third and Thurlow Streets in the City of Chester.  At the time of this incident, Officer Walls had been a patrol officer in the City of Chester for more than three years.  The area around the intersection of West Third and Thurlow Streets is a high-crime area known for violent crime and open-air drug sales.  Officer Walls, himself, previously witnessed a shootout at this same intersection.

---

[*] Retired Senior Judge assigned to the Superior Court.

While on patrol on October 5, 2021, Officer Walls observed Appellant Ce'Jii Campbell standing [] by the intersection wearing a ski mask. Officer Walls described the ski mask as a "full mask" that covered his entire face except his eyes. At the time, the outdoor temperature was 66 degrees Fahrenheit. The weather did not require thermal protection from a ski mask. Obviously, the ski mask was worn for some other purpose. During his employment as a Chester Police Officer, Officer Walls had previously encountered individuals wearing ski masks and those individuals were commonly involved in robberies, shootings, and homicides.

Appellant was seen approaching an occupied vehicle while grasping his waistband in a manner Officer Walls recognized from his training and experience as indicative of a person carrying an illegal firearm. When Appellant noticed Officer Walls, he stepped out of the street and positioned himself in such a way that a car was between him and Officer Walls, blocking Walls' view. Officer Walls got out of his patrol vehicle which prompted Appellant to begin walking away from the intersection. As Appellant walked away, he was manipulating an object in his jacket pocket and was continually looking back at Officer Walls while positioning part of his body away from the officer. Officer Walls demonstrated the maneuver and described it as "blading." Based on Officer Walls' training and experience, he recognized the "blading" maneuver as consistent with a person in possession of an illegal firearm or other contraband and trying to obscure it from view.

Based on Appellant wearing a ski mask in a high crime area during warm weather coupled with Appellant's familiar "blading" maneuver, Officer Walls conducted an investigatory detention and pat down. Upon performing the pat down, Officer Walls discovered a Glock .40 caliber handgun in Appellant's waistband.

Trial Court Opinion, 4/11/23, at 3-5.

Appellant filed a motion to suppress and argued that he was unlawfully subjected to a stop and frisk. A suppression hearing was held, and the trial court denied the motion. Appellant filed a motion for reconsideration, which was denied after oral argument. The parties proceeded to a stipulated bench

trial wherein the trial court found Appellant guilty and sentenced him to an aggregate term of 30 to 60 months of incarceration. This appeal followed.

Appellant raises two issues for our review:

1. Whether the trial court erred by denying Appellant's motion to suppress physical evidence and statements where appellant was seized in the absence of specific and articulable facts to support a reasonable suspicion that criminal activity was afoot and frisked in the absence of reasonable suspicion that he was armed and dangerous, in violation of the United States and Pennsylvania Constitutions?

2. Whether the trial court erred by denying appellant's motion to suppress physical evidence and statements where the search of appellant exceeded the scope of a permissible *Terry* frisk, in violation of the United States and Pennsylvania Constitutions?

Appellant's Brief at 4.

It is well-settled that:

[O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

***Commonwealth v. Yandamuri***, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted).

The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens against

- 3 -

unreasonable searches and seizures by law enforcement. U.S. Const. amend. IV; Pa. Const. Art. I, § 8. "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Commonwealth v. Luczki*, 212 A.3d 530, 542 (Pa. Super. 2019). There are three general levels of contact between the police and citizens: (1) mere encounter; (2) investigative detention; and (3) custodial arrest. *Id.* Here, both parties and the trial court agree that the interaction was an investigative detention.

An investigative detention "constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot." *Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019). For a stop and frisk to be constitutionally sound, the following two conditions must be met:

> First, the investigatory stop must be lawful. That requirement is met in an on-the-street encounter … where the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

*Interest of T.W.*, 261 A.3d 409, 417 (Pa. 2021) (citing *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009)). While officer safety is a legitimate interest, it only enters a Fourth Amendment analysis if the investigative detention was supported by reasonable suspicion. *Adams*, 205 A.3 at 1204. "A contrary

conclusion would eviscerate the Fourth Amendment since a concern for officer safety is present in nearly all interactions police have with members of the public." *Id.* "Simply put, in the absence of reasonable suspicion of criminal activity justifying an investigative detention, officer safety is not a permissible basis for police to seize an individual during a mere encounter." *Id.*

A reasonable suspicion analysis considers the totality of the circumstances. *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004). "[A]n investigative detention is constitutionally permissible if an officer identifies "specific and articulable facts" that led the officer to believe that criminal activity was afoot, considered in light of the officer's training and experience." *Adams*, 205 A.3d at 1205. The test is not limited to facts that clearly indicate criminal conduct. *Rogers*, 849 A.2d at 1189. "Rather, [e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Id*. (internal citations omitted).

Recently, our appellate courts have cautioned that the characterization of a neighborhood, i.e., high crime and/or high drug, should not be the primary basis for reasonable suspicion. *See Commonwealth v. Barr*, 266 A.3d 25, 44 (Pa. 2021) (the fact that a traffic stop occurred in a high crime area, without more, is not relevant to whether troopers had probable cause to search the vehicle); *Commonwealth v. Hicks*, 208 A.3d 916, 951 (Pa. 2019) ("Even taking into account the early morning hour and [the] characterization of the neighborhood, there remains no particularized basis upon which to

suspect that [defendant's] mere possession of a concealed firearm was unlawful"); ***Commonwealth v. Brown***, 2020 WL 6335982 (Pa. Super. 2020) (unpublished memorandum) ("while the police's characterization of a neighborhood may enhance suspicion if tied to some specific conduct by the frisked individual, it does not carry much weight in and of itself").

Here, Walls testified that the reason he stopped Appellant was "due to him possibly possessing contraband or a firearm." N.T. Suppression, 5/18/22, at 62. Walls stated the pat-down occurred because he believed Appellant "was armed and possibly a danger to myself or others." ***Id.*** at 27. This belief was "due to how he was turning his body and avoiding me being able to see the front of the waistband area." ***Id.*** at 30. Walls explained that "it draws concern when the person's looking over their shoulder at me and I can't view their hands." ***Id.*** at 52.

The trial court found Walls had reasonable suspicion to conduct an investigatory detention of Appellant. Trial Court Opinion, 4/11/23, at 6. First, Appellant was wearing a ski mask in a high-crime area despite warm temperatures, which is "indicative of a subject seeking to hide his identity." ***Id.*** Further, the trial court credited Walls' testimony, based on his experience, that wearing a ski mask was "indicative of Appellant engaging in criminal activity." ***Id.*** Second, the way Appellant grabbed his waistband while walking to the parked vehicle in the street "was consistent with the officer's past experiences with armed subjects." ***Id.*** Lastly, the way Appellant moved,

described by Walls as "blading", "was indicative of an individual attempting to obscure contraband from the view of police according to Officer Walls' training and experience." *Id.*

Appellant argues Walls had no reasonable suspicion to believe that criminal activity was afoot and did not articulate anything more than a suspicion or hunch. He argues this case is analogous to ***Commonwealth v. Anderson***, 276 A.3d 282 (Pa. Super. 2022) (*en banc*), where we held that the facts did not support reasonable suspicion to conduct an investigative detention:

> (1) [defendant] was observed by the officers in a high crime area at 9:30 p.m.; (2) he was crawling on his hands and knees by a parked, albeit askew truck that was turned off; (3) when Officer McGowan first spoke with him and asked if he was okay, [defendant] said that he was looking for something; (4) [defendant] was first observed sweating profusely on a May night, when the temperature that day was 86 degrees; (5) Officer McGowan saw that the driver's side window of the truck was down, which [] caused him to be curious that the driver was intoxicated or impaired, but Officer McGowan never intended to ask [defendant] if he was the driver or to find the driver; (6) the officers observed [defendant] go into the restaurant, pace around, and order a drink but not food; (7) [defendant] came out of the restaurant, looked at the officers, and then turned right and walked off; (8) the officer did not perceive any indication that [defendant] was in an intoxicated state; and (9) as the trial court points out, there was no testimony that [defendant] made any furtive movements or that Officer McGowan felt his safety was at issue.

***Anderson***, 276 A.3d at 297. In holding that the officer did not possess the requisite reasonable suspicion, we explained:

> Officer McGowan repeatedly testified that he was "curious" of the circumstances, that things seemed a little bit "unusual," and that

something was off. However, as noted above, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." [**United States v. Sokolow**, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)] (citations and quotation marks omitted). Officer McGowan's testimony amounted to nothing more than a "hunch" that something was amiss as his "reasonable suspicion" belief stemmed from the fact that they were in a high crime area, the truck was not parked properly even though he never connected [defendant] with the vehicle, the fact that the windows were down, and [defendant's] state of profuse sweating.

*Id.* at 297-298.

We distinguished **Anderson** from **Commonwealth v. Carter**, 105 A.3d 765 (Pa. Super. 2014) (*en banc*), one of the cases relied upon by the Commonwealth. In **Carter**, we found there was reasonable suspicion to believe criminal activity was afoot where:

[defendant] was in a high-crime area, at night, with a weighted and angled bulge in his coat pocket. Furthermore, [defendant] was alerted to the officers' presence and intentionally turned his body away from them, at least three times, to conceal the bulge. The officers also observed [defendant] walking away from the known drug corner whenever the officer's passed by it.

**Carter**, 105 A.3d at 775. We explained the distinction:

Officer McGowan did not testify that he observed a bulge in [defendant's] clothing or that his clothing appeared to be weighted down. He also never testified that when [defendant] stood up after crawling on the ground, he observed [defendant] attempting to conceal an item in his pants. Rather, Officer McGowan stated that after questioning [defendant], he made the decision to search – first the pat down [defendant's] pockets which revealed nothing, and then the sweep over [defendant's] groin area where he felt a bulge. The officer never testified that [defendant] was carrying anything in his hands that was suspicious, that he saw [defendant] engaging in criminal activity, or that he was concerned for his own safety.

- 8 -

*Anderson*, 276 A.3d at 298.

We find this case more analogous to *Carter* than to *Anderson*. Appellant was in a high-crime area in the evening. N.T. Suppression, 5/18/22, at 19. The temperature was around 66 degrees, unusually warm for October. *Id.* at 22. Walls was on routine patrol and while driving west on Third Street approached a vehicle stopped at the intersection of Third and Thurlow Streets. *Id.* at 23, 59. Appellant approached the vehicle on the driver's side while holding his waistband area with his hand. *Id.* at 23. Based on his training and experience, Walls testified that people who hold their waistbands while fleeing are typically carrying an illegal firearm or trying to conceal an item. *Id.* at 23-24.

Appellant was wearing an overcoat, camouflage pants and a ski mask that covered his entire face. *Id.* at 20. Walls testified that based on his experience, people wear ski masks when they commit crimes, such as robberies, shootings or homicides. *Id.* at 22. When Appellant saw Walls' vehicle, he walked to the sidewalk, put his left hand in his pocket and moved his hand around. *Id.* at 24-25. Appellant then walked behind a vehicle, only allowing Walls to see his upper chest and head. *Id.* at 25-26. Upon seeing Walls exit his vehicle, Appellant turned and walked away, concealing the front of his body, while looking back over his shoulder at Walls. *Id.* at 27. Walls said this behavior is commonly known as "blading" and he frequently sees this behavior when someone is carrying contraband or an illegal firearm. *Id.* at

30. Walls "moved quickly" to catch up to Appellant, touched Appellant from behind, asked him to remove his hands and conducted a pat down search. *Id.* at 30, 61-62.

Based on the totality of the circumstances, we agree with the trial court that Walls identified specific and articulable facts which provided reasonable suspicion to conduct an investigative detention. *Adams, supra*. Appellant was wearing a full ski-mask on a day where the temperatures did not require it, in a high-crime area. His movements were indicative of someone carrying an illegal firearm and upon noticing Walls, walked away and attempted to conceal the front of his body. Moreover, based on Walls' experience and Appellant's movements, we agree with the trial court that Walls reasonably believed Appellant was armed and dangerous, justifying a frisk. *Interest of T.W., supra.* Thus, the trial court did not err in denying Appellant's motion to suppress. *Yandamuri, supra.*

In the second issue, Appellant asserts that the trial court erred in denying his motion to suppress because the search exceeded the scope of a *Terry* frisk. The Commonwealth contends this issue is waived because Appellant failed to raise it in his motion to suppress. We agree.

A suppression motion "shall state specifically and with particularity the evidence sought to be suppressed, the grounds for the suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). "Thus, when a defendant's motion to suppress does not assert specifically the grounds for

suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1242 (Pa. Super. 2015). Additionally, an appellant's brief must state where the issue was preserved in the trial court. ***See*** Pa.R.A.P. 2117(c).

Nowhere in his motion to suppress did Appellant claim that the search exceeded the scope of a ***Terry*** frisk. Specifically, he argued:

> Because there was no justifiable specific and articulable reasons for Officer Walls to conclude that petitioner was both armed and dangerous, the stop, frisk and seizure violated petitioner's rights under the Fourth and Fourteenth Amendments the United States Constitution, as well as his rights under Article I Section 8 of the Constitution of the Commonwealth of Pennsylvania.

Motion to Suppress, 3/15/22, ¶ 7. Moreover, Appellant's brief does not state where and how the issue was preserved.[1] He argues that the Commonwealth failed to present evidence to prove that the scope of the search was lawful. Appellant's Brief at 23-25. However, that is an incorrect statement of the law. Appellant's motion failed to state with particularity that he was challenging the scope of the frisk, and he cannot now claim the Commonwealth failed to address a theory that was never raised. Therefore, the issue is waived. ***Freeman, supra***.

---

[1] Appellant also filed a reply brief but did not address the Commonwealth's contention that the issue was waived.

Even if the issue was not waived, Appellant would not be entitled to relief. Appellant alternatively argues that if the investigatory detention was lawful, Walls exceed the scope of a **Terry** frisk because there was no evidence that what Walls felt in Appellant's waistband was a weapon. Appellant's Brief at 23. Our Supreme Court held:

> If a police officer conducting a lawful **Terry** frisk detects an object within a suspect's clothing, assuming no other exception to the general warrant requirement applies, the officer may remove the object under one of two justifications. Pursuant to **Terry**, and consistent with … **Taylor**, a police officer may remove an object from within a suspect's clothing under the reasonable suspicion that the object is a weapon. If, however, during the frisk the police officer is able to determine that the object is not a weapon, pursuant to **Dickerson**, the officer may only remove the object if, by touch, it is immediately apparent that the object is illegal contraband.

**Interest of T.W.**, 261 A.3d at 422. We apply a reasonable suspicion standard to determine whether an officer exceeded the scope of a lawful **Terry** frisk. **Id.** at 423. In **Interest of T.W.**, our Supreme Court found the following facts "would allow a reasonably prudent person to suspect that the object in [a]ppellant's left pants pocket was a weapon: (1) appellant was a passenger in a high-speed chase; (2) in a high crime area; (3) once the vehicle stopped, appellant shielded his body from officers; and (4) appellant reached into his pocket after being told not to. **Id.** at 424.

Similarly, as discussed *supra*, Walls identified specific and articulable facts to believe that Appellant was carrying a firearm. Appellant's movements were indicative of someone illegally carrying a firearm, and Walls' frisk was

limited to the area that he suspected the firearm to be. Thus, we find Walls did not exceed the scope of the *Terry* frisk because he had reasonable suspicion to believe the object was a firearm. *Interest of T.W., supra.*

Based on the foregoing, we find the trial court did not err in denying Appellant's motion to suppress and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2024