Filed 11/14/24  P. v. Garridoaguilar CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN CARLOS GARRIDOAGUILAR,<br><br>    Defendant and Appellant. | A168477<br><br>(San Mateo County<br> Super. Ct. No. 22SF007223A) |

Defendant Juan Carlos Garridoaguilar pleaded no contest to one count of possession of a concealed and loaded firearm that was not registered to him.  The trial court suspended imposition of a sentence and placed defendant on probation for two years.  On appeal, defendant contends the court erred in denying his motion to suppress evidence.  Furthermore, relying on the United States Supreme Court's decision in *New York State Rifle & Pistol Assn., Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), he contends the statute he was convicted of violating is unconstitutional.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The People charged defendant by information with one felony count of possessing a concealed and loaded firearm that was not registered to him.

1

(Pen. Code, § 25400, subd. (c)(6).[1])  After entering a plea of not guilty to the charged count, defendant belatedly filed a demurrer arguing that *Bruen*, *supra*, 597 U.S. 1, effectively overturned California's firearm licensing scheme, thereby rendering section 25400 unconstitutional and barring further prosecution.  (§ 1004 [demurrers allowed before entry of a plea].)  Contemporaneously, defendant filed a motion to suppress evidence seized during the traffic stop that resulted in his arrest.  (§ 1538.5.)  The court overruled the demurrer and denied the suppression motion.

Defendant eventually pleaded no contest to the section 25400, subdivision (c)(6) count.  The trial court suspended imposition of a sentence and placed defendant on formal probation for two years.  Defendant filed a notice of appeal indicating his appeal would be based on the denial of a suppression motion and a challenge to the constitutionality of California's firearm laws.  Defendant requested a certificate of probable cause regarding the latter issue, stating "the defense's position is that the applicable gun laws in this case do not pass constitutional muster after the *Bruen* decision.  Specifically, the good cause requirement to purchase a firearm is invalid."  The court denied the probable cause certificate.

## DISCUSSION

### A.  Fourth Amendment

Defendant first contends the trial court erred in denying his suppression motion.

#### 1.  Additional Facts

At the hearing on the suppression motion, Redwood City Police Officer Jose Gonzalez testified he was on duty on June 9, 2022 at around 3:42 a.m.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

2

when he observed a white Honda. He ran a check on the car's license plate, discovered the registration was suspended in violation of the Vehicle Code, and initiated a traffic stop. As Gonzalez approached the driver, he saw the car had four occupants, with defendant in the back seat.

Officer Gonzalez advised the driver of the reason for the stop. The driver responded "no" when asked if there were firearms or drugs in the car, and gave Gonzalez consent to search the car. Each occupant consented to Gonzalez's request to exit the car, though Gonzalez did not have them exit all at once. As Gonzalez began patsearching a female passenger, she said something along the lines of, "this is not mine," which caused Gonzalez to assume she was referring to her jacket. Though Gonzalez began his patsearch of the female for unspecified officer safety purposes, after the female said this, Gonzalez noticed the right side of her jacket looked "a little heavier," leading him to believe she might have a weapon. He searched that part of her jacket and found a loaded magazine for a handgun.

Having found the loaded magazine, Officer Gonzalez believed there was a firearm in the vicinity. He placed the female passenger in handcuffs and had his partner handcuff the driver. Gonzalez then had defendant exit the car and asked if he had a weapon, to which defendant responded, " 'I found a gun over there.' " Gonzalez searched defendant and found an unserialized "ghost" gun on his person. Upon determining that the loaded magazine was compatible and worked with the firearm, Gonzalez arrested defendant. He did not cite the driver for driving with a suspended registration.

After Officer Gonzalez testified, the defense argued the detention was impermissibly prolonged by the officer asking for consent to search the vehicle and conducting an investigation that was not directly pertinent to the reason for the stop, i.e., driving with a suspended registration. Finding no

3

evidence that the detention was prolonged, the trial court denied the suppression motion.

### 2. *Analysis*

" 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232 (*Silveria and Travis*).)

"The Fourth Amendment guarantees 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision. [Citations.] An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." (*Whren v. United States* (1996) 517 U.S. 806, 809–810.)

Here, defendant concedes the legality of the initial traffic stop. Nevertheless, he contends Officer Gonzalez improperly prolonged the stop by (i) ordering everybody out of the car; (ii) questioning the occupants about drugs and guns; and then (iii) conducting a patsearch of the occupants.

Under Fourth Amendment principles, a traffic stop is akin to a "*Terry* stop."[2] Thus, "[l]ike a *Terry* stop, the tolerable duration of police inquiries in

---

[2]     *Terry v. Ohio* (1968) 392 U.S. 1.

4

the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [citation], *and attend to related safety concerns*, [citations]. [Citations.] Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate [that] purpose.' [Citations.] Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." (*Rodriguez v. United States* (2015) 575 U.S. 348, 354 (*Rodriguez*), italics added.)

During a traffic stop, "[t]he Fourth Amendment tolerate[s] certain unrelated investigations that [do] not lengthen the roadside detention." (*Rodriguez, supra,* 575 U.S. at p. 354.) "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, *so long as those inquiries do not measurably extend the duration of the stop*." (*Arizona v. Johnson* (2009) 555 U.S. 323, 333 (*Johnson*), italics added.)

Defendant points to nothing in record indicating the duration of the traffic stop was impermissibly extended. First of all, to the extent he challenges the propriety of Officer Gonzalez having the occupants exit the car, the record establishes that Gonzalez had obtained the driver's consent to search the car as well as each passenger's consent to exit the car (presumably so he could conduct the car search). Moreover, case law is clear that, given the dangers attendant to traffic stops, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." (*Maryland v. Wilson* (1997) 519 U.S. 408, 414–415.) In short, this action did not impermissibly extend the stop.

Second, defendant argues the traffic stop was impermissibly extended due to the inappropriateness of Officer Gonzalez asking the occupants

5

whether there were "firearms or drugs in the vehicle."  We see no impropriety.  Gonzalez acted properly in inquiring about weapons as a safety measure, and even if including the reference to "drugs" did not, strictly speaking, pertain to safety, its inclusion prompted a one-word response from the driver ("no") that did not meaningfully extend the stop.  (See *United States v. Taylor* (9th Cir. 2023) 60 F.4th 1233, 1239 [asking whether driver had weapons is an ordinary inquiry incident to a traffic stop, and the officer's mention of drugs in the same inquiry, to which the driver gave a single answer, did not measurably prolong the stop]; see also *Rodriguez, supra*, 575 U.S. at p. 354 ["the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, [citation], *and attend to related safety concerns*" (italics added)]; *Johnson, supra*, 555 U.S. at p. 330 ["traffic stops are 'especially fraught with danger to police officers' "].)

Finally, defendant contends Officer Gonzalez improperly prolonged the stop by patsearching the occupants.  He argues that "Gonzalez's testimony did not establish anything that would lead a reasonable person to believe the female passenger—or anyone else in the car—was armed," and contends more specifically that the patsearch of the female unduly prolonged the traffic stop.

It is well established that once a vehicle is lawfully detained, officers "may 'perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous.' " (*Johnson, supra*, 555 U.S. at p. 332.)  But to the extent defendant's appeal rests on the perceived illegality of the patsearch of the female passenger, the People contend defendant forfeited this challenge because he failed to raise the claim in the trial court.  There may be merit in this contention.

" '[W]hen defendants move to suppress evidence under section 1538.5, they must inform the prosecution and the court of the specific basis for their motion.' " (*Silveria and Travis*, *supra*, 10 Cal.5th at p. 235.) Defendants "satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, *defendants can respond by pointing out any inadequacies in that justification.* [Citation.] *Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal. '[T]he scope of issues upon review must be limited to those raised during argument.'* " (*People v. Williams* (1999) 20 Cal.4th 119, 136, italics added.) "The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id.* at p. 135.) "Defendants cannot . . . lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id.* at p. 131.)

In the proceedings below, defendant's suppression motion argued that the police "lacked reasonable suspicion, probable cause[,] or a warrant for the initial stop" (a claim now abandoned on appeal), and also that the officer "additionally prolonged the stop after any suspicion should have been dispelled." Notably, defendant's motion made no challenge to the legality of the patsearch of the female passenger, not even as an aspect of the alleged prolonging of the stop. And though the People's opposition papers mentioned the patsearch of the female in passing, defendant's reply did not respond with any argument about the patsearch. At the hearing on the suppression motion, the defense argued in full: "Your Honor, the argument is this is a prolonged detention, he stopped the car because of suspended registration.

7

He never wrote a ticket for the registration. He did not conduct any—there was no further investigation regarding the registration. At that point he then just asked for consent to search the vehicle and conducted a different investigation that wasn't directly pertinent to the one that he was conducting and never seemed to even completed that investigation, so to speak. [¶] So, as a prolonged detention issue, I would ask for suppression." Nothing in defendant's motion papers or argument at the hearing informed the prosecution of the need to adduce greater detail as to why the patsearch of the female passenger was justified. Accordingly, defendant appears to have forfeited review of this claim. (See *Silveria and Travis, supra,* 10 Cal.5th at pp. 235–236.)

Though defendant does not specifically claim that his Fourth Amendment rights were violated by the patsearch of the female passenger, he does contend that Officer Gonzalez discovered the ghost gun only after unduly prolonging the stop by patsearching her. But in pressing this contention, defendant explains that the delay caused by the patsearch was not justified because Gonzalez did not "point to facts that reasonably support a suspicion [the female passenger] was armed and dangerous." Essentially, then, defendant is challenging the legality of that patsearch by nesting it within a claim that the stop was unduly prolonged. But because defendant's suppression motion failed to argue or develop any facts demonstrating the illegality of the patsearch, we seriously question his efforts on appeal to rely on the illegality of the search as a basis for challenging the duration of the traffic stop.

In any case, even if we consider defendant's argument that Officer Gonzalez unduly prolonged the stop by patsearching the female passenger, defendant fails to point to anything in the record supporting this claim.

Indeed, there is nothing in the record indicating how much time elapsed between the point when Gonzalez initiated his patsearch of the female passenger and the point when Gonzalez saw the suspicious weighting of her jacket after she denied something was not hers, which led to the discovery of the loaded magazine in her jacket pocket. (*Johnson*, *supra*, 555 U.S. at p. 332.) After finding that magazine, Gonzalez had reasonable suspicion to patsearch defendant and the other passengers for weapons. And, at the very least, Gonzalez reasonably could and did ask defendant if he had a weapon (*Rodriguez*, *supra*, 575 U.S. at p. 354), to which defendant responded, " 'I found a gun over there,' " thus leading to the discovery of the firearm.

In sum, the time supposedly "wasted" by Gonzalez appears to be his initial patsearch of the female passenger, allegedly without reasonable suspicion to believe she was armed and dangerous, up until the time Gonzalez observed the suspicious weighting of the female passenger's jacket, which then provided reasonable suspicion to patsearch the female. But there is no evidence concerning how much time elapsed between Gonzalez initiating the patsearch, and his observing the suspicious weighting of the female passenger's jacket. We may reasonably infer that the period of time was quite brief, and given the lack of evidence and surrounding circumstances, we cannot conclude the stop was unduly prolonged.

## B. Second Amendment

Defendant appears to contend that section 25400 is unconstitutional based on *Bruen*, *supra* 597 U.S. 1, which was decided more than a year before his no contest plea and clarified Second Amendment principles earlier endorsed in *District of Columbia v. Heller* (2008) 554 U.S. 570. (*Bruen*, at p. 31.) Observing that *Bruen* invalidated certain discretionary criteria used to deny gun owners licenses to carry concealed firearms in public, defendant

reasons that the invalid statutory criteria cannot be retroactively severed from the licensing scheme, which renders that entire scheme invalid. In defendant's view, his conviction is invalid under *Bruen* unless the state can " 'affirmatively prove that its firearms regulation is part of the historical tradition that determines the outer bounds of the right to keep and bear arms.' "

Because it is dispositive, we address the People's argument that the claim is not cognizable because defendant pleaded no contest and did not obtain a certificate of probable cause.

Section 1237.5 provides: "No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, . . . except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the clerk of the court." A claim that challenges the validity of a plea is subject to the requirement for a probable cause certificate. (Cal. Rules of Court, rule 8.304(b)(1)(A).) If a "superior court denies a certificate of probable cause, the appeal will be limited to issues that do not require a certificate of probable cause." (*Id.*, rule 8.304(b)(3).)[3]

Citing California Rules of Court, rule 8.304(b)(2), defendant claims his Second Amendment challenge does not go to the validity of the plea and does not require a probable cause certificate because he is simply challenging

---

[3]　A defendant can seek mandamus review of a trial court's refusal to issue a certificate. (*People v. Johnson* (2009) 47 Cal.4th 668, 676.) There is no indication in the record that defendant did so in this case.

10

whether the elements to which he admitted in entering the plea constitute a crime at all. We are not persuaded.

Defendant's briefing indicates he is arguing that the state had no constitutional authority to try him under section 25400, and so had no power to accept his no contest plea. Whether viewed as a challenge to the constitutionality of the legal proceedings or a challenge to the validity of the plea, the claim required a certificate of probable cause, which defendant did not obtain. Consequently, we decline to consider defendant's Second Amendment contention.

### DISPOSITION

The judgment is affirmed.

_____
Fujisaki, J.


WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


*People v. Garridoaguilar* (A168477)

11